## Ford *against* Potts and others.

### IN ERROR.

It is not necessary that there should be a trial of a cause, in order to entitle a party to a bill of exceptions; it may be taken to the opinion of the court, on the sufficiency of objections to an award.

The court are not bound to receive reasons filed, or affidavits taken at so late a period that they could not be answered, and the witnesses could not be cross-examined, unless reasons for the delay are shewn.

Under the act of December, one thousand seven hundred and ninety-four, it ought to appear upon the face of the proceedings, that the referees were duly sworn.

The act does not make void every award of arbitrators, who were not duly sworn; it may be waived by the parties.

It does not extend to cases which had been referred previously to its passing.

---

In November, one thousand seven hundred and ninety-one, cross actions of covenant had been brought by the present parties, in the Commom Pleas of Sussex county. In August, 1793, both suits were referred to the same arbitrators, whose award, or the award of a majority of whom, returned to the next, or any subsequent term, was to be final between the parties, and judgment was agreed to be entered accordingly. From various causes, the arbitrators did not make their report until May term, 1795, which was dated in the month of April, of the same year, and was regularly read, filed and judgment entered accordingly.

At the same term, a motion was obtained by Ford, to shew cause why the award should not be set aside, returnable to the first day of the succeeding term ; all proceedings in the meantime to be stayed. In August following, this motion was discharged by the court, after argument, and bills of exception being tendered to the opinion then delivered, were sealed by the Court of Common Pleas, and the cause removed to this court.

The objections taken, and which were the foundations of the bills of exception, to the opinion of the court below, were :—

1. The court refused to permit the defendant below to read his reasons for setting aside the award, the principal of which was that the arbitrators had not been qualified pursuant to the directions of the act of assembly of December 2d, 1794. The ground upon which the court refused to hear these reasons, was that they were filed only the day before the motion was to be argued.

2. The court refused, on the same ground, to hear affidavits that had been taken to support the objection to the award.

3. It was objected to the award, that it did not there appear that the arbitrators had been duly qualified, which objection was overruled by the court.

*Ab. Ogden*, for plaintiff in error. There can be no question as to the truth of the facts upon which the exceptions to this award were taken. The act of assembly of December 2d, 1794, (*Paterson* 141–2,) in the sixth section, requires in express terms, "that every arbitrator shall, before he proceeds to the business submitted to him, take an oath or affirmation," &c., faithfully and fairly to hear and examine the cause, and to make a just and true report. Here a positive duty is enjoined, which has been violated; a security is afforded to the party, of which he has been deprived. The reasons and affidavits were prepared and ready for the court, at the time which had been appointed, and if the opposite party found themselves unprepared, or taken by surprise, they should have applied for a postponement. No injury could have resulted from such a course, and no delay would have been permitted, had none been necessary.

Independent, however, of any difficulties arising from an alleged want of time, it is contended that sufficient appears on the face of the proceedings themselves, to have authorized the court to set aside the award. Objections appearing in the record itself, or in the report, may be taken advantage of at any time. The exception which we thus consider fatal, is, that it no where appears that the referees were sworn. Inferior tribunals are always obliged to shew the regularity of their proceedings, and as the law has imposed upon them, as a pre-requisite to their acting, that they should take a certain form of oath or affirmation before their acts can be recognized as valid, it must appear that they have pursued the directions of the law.

With regard to the objection which has been intimated, that a bill of exceptions will not lie in a case of this description, it may be observed that there is no foundation for the principle upon which it rests, that bills of exception can only be taken at a trial. *Buller* 315. This proceeding is founded upon the statute of *Westminster* 2, 13 *Edw.* 1 *c.* 31, and the language used in the statute is perfectly explicit and

unambiguous. "When one that is impleaded before any of the justices," &c. Occasions most generally present themselves at trials, and accordingly most of the cases referred to are of that nature. They should be encouraged and admitted whenever an inferior jurisdiction has trespassed upon the limits assigned to it, or indulged in any illegal and arbitrary proceedings.

*R. Stockton,* on the same side.

*A. Ogden,* contra. The bills of exception constitute no part of the record. The statute of *Westminster* has never been held to extend to collateral motions for new trials. Bills of exception are spoken of in all the books, as taken only at trials; (2 *Tidd's Prac.* 786,) and as they serve for the foundations of writs of error, they never lied unless when a writ of error may be brought. If they were to be taken to every collateral opinion that might be dropped by a judge, in the various stages of a cause, and in the incidental proceedings of inferior tribunals, questions for litigation would be forever occurring, and disputes would never be terminated.

As to the errors complained of: the court had a right to order the argument on, and then every objection was proper. Nothing appears to shew that we had any notice of the fact, until the moment of argument.

It is objected, that it does not appear the referees were sworn. It is not necessary that it should so appear. The parties appeared before the referees, and thereby acknowledged their authority so far, as to be estopped from questioning their jurisdiction. *Andrews* v. *Linton,* 2 *Lord Ray.* 884. The reasoning of Lord Holt, is perfectly applicable to the present case. The complaint should be made during the term of the irregularity, and after the term, all persons are precluded from saying the person was not sheriff. The

objection to the arbitrators, on account of their not being sworn, should have been taken at an earlier period than the second term, and it has been waived by the delay.

On another ground, this objection avails nothing against the award in this case. Whenever matter of error is apparent on the record, it may be taken advantage of any at time ; but when the error is latent, it must be objected to at the time ; it must be challenged, or the exception is waived. *Vin. Abr. title Error,* 474, *pl.* 3; 530, *pl.* 22. It is not assignable for error, that he who returned a writ was not sheriff.

Further, it appears by the record, that the cause was referred before the passing of the act requiring referees to be sworn, and the words of the act direct them to be sworn *before they proceed.* Nothing appears to shew that they had not commenced the investigation of the business before the law was made, and, in order to support a judgment and an award, such a presumption is fair.

*Stockton,* in reply.

KINSEY C. J. delivered the opinion of the court. (After stating the case.) It is contended, on the part of the plaintiff, that a bill of exceptions would not lie in a case of this kind. This objection we consider as entitled to little weight. The design of the statute was to provide a mode for examining errors which could not properly be inserted in the record, and allows an exception wherever a party is impleaded, that is, sued or prosecuted; and I see no reason for restricting it to trials. I recollect a case where a challenge to the array was made, and, being overruled, a bill of exceptions was taken, and the question carried before the governor and council, by whom it was determined; and the right to except was never questioned.

If the proceedings of the inferior court were illegal, and violated the rights of the party, this court would, in some form or another, come at the error, and see that justice was done. *Mease* v. *Mease, Cowp.* 47.

After removing this preliminary difficulty, we come to the error complained of. It is contended, that the court below ought not to have rejected the affidavits and reasons, because the witness being present might have been cross-examined, and because, had the opposite party complained of surprise, further time might have been allowed, which was the usual practice of the court. The circumstances of the case which has been referred to as establishing a precedent, and authorizing this practice, are not precisely known; but we think that every court possesses the right of rejecting affidavits, when offered at so late a period as not to allow a full hearing, when they perceive that the receiving them will be productive of delay, and that delay is attempted by the party thus guilty of laches; and when, as in the present case, the time for hearing the argument was fixed by the party who has delayed taking the affidavits at a period sufficiently early to admit of disproving the facts. The delay was altogether unnecessary and unaccounted for, and not to be encouraged. We cannot therefore say, that the justices below were wrong in rejecting this attempt to create delay.

But however this may be, if the facts serving as the foundation for the exceptions to the award are insufficient to vitiate it, the judgment ought to be affirmed, although the court erred in refusing to hear the affidavits and reasons.

There seems some weight in the observation, that if the sixth section of the act of 1794 applied to this case, and the referees should have been sworn before they proceeded to business, this fact ought, in some manner or another, to have been made to appear on the face of the proceedings themselves. The case of a jury is perfectly analogous: a jury is summoned to try facts before the court; the universal practice is to state, on the record, that they were previously and regularly sworn, and a failure to state this would be error. I cannot distinguish, in principle, between the two cases. If it is not necessary that the fact should appear, the statute may become altogether inoperative.

The case from *Raymond* is inapplicable. This is a special jurisdiction, created for a particular purpose, and the regularity of the whole proceeding must be shewn. I do not think that the single circumstance of appearing before an arbitrator and defending a suit, would estop a party from questioning his authority. Want of jurisdiction may be taken advantage of at any time.

The next question to be considered is, whether the act of 1794 applies to the arbitrators in this suit? It is important here to attend with some exactness to dates. The reference was entered into in August, 1793; the act of assembly requiring arbitrators to be qualified, was passed in 1794; the award, dated April, 1795, was filed in May, 1795.

This act is almost a transcript of the 9 *and* 10 *Will. III. c.* 15. With the exception of the sixth section, the parts which relate to references, it is chiefly confined to cases where no suit is actually depending, and seems intended to put such disputes on the same footing as if there had been a suit commenced. Where there is a suit depending, a reference depends on the common law; it is not affected by the statute. *Lucas* v. *Wilson*, 2 *Bur.* 701.

The words of the sixth section are more general, and do not seem restricted to any particular references. It directs, that in cases of arbitration, every arbitrator, " before he proceeds, &c., shall take an oath or affirmation," &c. These words, however, according to their usual acceptation, would seem to impose a duty rather on the arbitrator than on the party. If the direction is not complied with, the law subjects him to no penalty; it does not invalidate the proceedings, or empower any court to set them aside. The qualification appears to me to be required for the security of the parties. If they knowingly go to a hearing before the arbitrators, and either neglect or omit to avail themselves of the security offered by the legislature, it would be unjust that they should be permitted to hold up the award as void. It is a principle *quilibet potest renunciare jus pro se intro-*

*ducto.* Many cases might be imagined, in which it would be in the highest degree unjust to declare the award void. If one of the parties were to suffer the arbitrators to proceed without being sworn, with the intention of availing himself of the defect, I should compare it to the case of *Gillman* v. *Hill, Cowp.* 141, where one knowingly executed a warrant of attorney in custody, with the design of availing himself of the circumstance, the court refused to set it aside.

The legislature have not declared, that the omission to take the oath should invalidate the award, and we cannot suppose that this was their meaning. If such was their intention, it might easily have been expressed, but as it is omitted, we can only judge of their intentions by what they have done.

We are also of opinion, that the act does not extend to cases which had been referred previously to its passing. The design of the legislature was to provide a rule for future cases. A parol promise, made before the statute of frauds, to be performed afterwards, is not within it, though the statute says, no suit shall be brought, after a certain day, on a parol promise, and the suit was brought after that day. 2 *Lev.* 227.

Judgment affirmed.